**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DANIEL SCHNELTING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-CV-01240-JAR |
| ) | |
| ST. CLAIR R-XIII SCHOOL DISTRICT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant St. Clair R-XIII School District's Motion for Judgment on the Pleadings or, in the Alternative, For Summary Judgment (ECF No. 19) and Motion to Strike Affidavit of Dr. Nancy Little (ECF No. 26). These matters have been fully briefed and are ready for disposition. For the following reasons, the Court will deny the Motion to Strike Affidavit, deny the Motion for Judgment on the Pleadings, and grant the Motion for Summary Judgment.

**I**. **Background**

Plaintiff Schnelting has filed a single-count complaint against Defendant St. Clair R-XIII School District ("the District") alleging violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act ("ADA") and seeking relief for alleged discrimination based on disability. Specifically, Plaintiff alleges that during the 2007-2008 school year, the District provided him with accommodations under Section 504 but refused to extend his 504 accommodation plan for the 2008-2009 school year, thereby denying him equal access to educational services that were being provided to his non-disabled peers. Plaintiff further alleges the District acted in bad faith or with gross misjudgment when it refused to extend his 504 accommodation plan. The District has moved for judgment on the pleadings or, in the alternative,

for summary judgment, on the grounds that Plaintiff cannot meet his burden to demonstrate he is disabled and that the uncontroverted facts demonstrate District did not discriminate against him on the basis of disability.

**II. Legal Standards**

As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss. Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233, n.3 (8th Cir. 2010), citing Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), *cert. denied,* 130 S. Ct. 3507 (2010). "Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a mater of law." A court "must accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001) (citations omitted).

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

**III. Discussion**

**A. Motion to Strike Affidavit**

The District has moved to strike the Affidavit of Nancy Little, Ph.D., submitted as Exhibit 1 by Plaintiff in his Opposition to Defendant's Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment, on the grounds that paragraphs 2 through 5 of the affidavit do not comply with Rule 56(e) in that they contain hearsay statements not based on personal knowledge as well as legal conclusions. The District is correct that summary judgment affidavits must be made on personal knowledge and that affidavits, or portions thereof, that do not comply with Rule 56(e) may be stricken. See Sperle v. Michigan Department of Corrections, 297 F.3d 483, 495 (6th Cir. 2002). However, in his Memorandum in Opposition to Defendant's Motion to Strike, Plaintiff indicates he endorsed Dr. Little as an expert, disclosed her to the District as an expert, and provided her curriculum vitae and reports to the District. The Court accepts as true that Dr. Little has been properly designated as an expert under the Federal Rules of Civil Procedure.

Rule 703 does not require experts to possess the type of personal knowledge that lay witnesses must. See Darling v. J.B. Expedited Services, Inc., 2006 WL 2238913 at *9 (M.D. Tenn. August 3, 2006). Rule 703 specifically allows experts to base their opinions and inferences on facts "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...." Fed.R.Evid. 703. Little Exhibit 3 specifically states that she based her opinion on Plaintiff's school records dating from 1999, which the Court finds are the kinds of records reasonably relied on by an expert in the educational field. Thus, the District's objection to Little's lack of personal knowledge is without merit and the Motion will be denied.

**B. Motion for Judgment on the Pleadings**

Section 504 provides, in part, that "[n]o otherwise qualified individual with a disability in the United States .... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C.A. § 794. The ADA provides, in part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. Section 504 and the ADA are "similar in substance," and with the exception of Section 504's federal funding requirement, "cases interpreting either are applicable and interchangeable." Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999).

Under either Act, a "disability" is defined as a "mental or physical impairment that substantially limits a major life activity." 42 U.S.C.§ 12102(2); 29 U.S.C. § 705(20)(B). "An impairment is considered 'substantially limiting' if it causes a person to be unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population." Costello v. Mitchell Public School District 79, 266 F.3d 916, 923 (8th Cir. 2001) (citing 29 CFR § 1630.2(j)(1)(i)-(ii)).

To establish a prima facie case of disability discrimination under Section 504, Plaintiff must prove he: "(1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on [his] disability. See Timothy H. v. Cedar Rapids Community Sch. Dist., 178 F.3d 968, 971 (8th Cir. 1999). Plaintiff must also show bad faith or gross misjudgment. Monahan v. Nebraska, 687 F.2d

1164, 1171 (8th Cir. 1982). To establish a prima facie case of disability discrimination under the ADA, Plaintiff must prove: "(1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's service, programs, or activities, or was otherwise discriminated against by the entity; and (3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability." Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998).

In his Complaint, Plaintiff alleges he has a medical diagnosis of ADHD, an impairment which substantially limits a major life activity. Although Plaintiff does not allege which major life activity is limited by his ADHD, the Court interprets the complaint as claiming a limitation on the major life activity of learning. See 34 CFR § 104.3(j)(2)(ii); 20 CFR § 1630.2(i). Plaintiff further alleges that during the 2007-2008 school year, the District provided him with a Section 504 Accommodation Plan, and that beginning in the 2008-2009 school year, the District refused to extend his Plan and determined he was no longer disabled and eligible for services under Section 504. Plaintiff alleges he and his parents asked the District to reinstate his 504 Plan and evaluate him to determine if he should remain eligible for services and the District refused. He states his "last" report card shows he failed Algebra, two sections of English, American History, World History and JROTC AV. He further states his current GPA for the Third Quarter was .4714 out of 4.0, his cumulative GPA was 1.2468 out of 4.0, and his cumulative earned credits were 16 out of a possible 23.50. Plaintiff alleges the District discriminated against him based on his disability by denying him equal access to educational services that were being provided for his non-disabled peers, and acted in bad faith or with gross misjudgment when it failed to continue his 504 Plan, evaluate him and find him entitled to eligibility and accommodations under section 504.

Assuming the factual allegations of the Complaint to be true, and construing the Complaint and reasonable inferences arising therefrom most favorably to the Plaintiff, the Court finds Plaintiff has pled a proper cause of action under both Section 504 and the ADA that is not subject to dismissal under Federal Rule 12 (c). See Independent Federation of Flight Attendants v. Cooper, 141 F.3d 900, 901 (8th Cir. 1998).

C. **Motion for Summary Judgment**

In its Motion, the District argues it is entitled to summary judgment because Plaintiff cannot meet his burden to demonstrate he is disabled under Section 504 and the ADA, and because the uncontroverted facts demonstrate the District did not discriminate against Plaintiff on the basis of disability.

As a threshold matter, the Court notes Plaintiff admits the majority of the District's 124 Material Facts. With respect to paragraphs 56 through 59, 69, 75 and 76, Plaintiff denies and objects to these statements on the grounds that they violate the Federal hearsay rule "as Defendant is attempting to introduce as fact a statement of a non-party to the litigation." A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed.R.Civ.Pro. 56(c)(1)(A). In addition, Local Rule 4.01(E) provides with respect to summary judgment motions that "[e]very memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies....All matters set forth in the statement of the

movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo.Local Rule 4.01(E). Plaintiff's unsubstantiated responses to the District's statement of material facts fail to satisfy the "concision and specificity required" by local rules such as Local Rule 4.01(E).[1] The Court will, therefore, consider these facts undisputed for purposes of the District's Motion. Libel, 482 F.3d at 1032 (citing Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) and discussing Iowa Local Rule 56.1) (district court did not abuse its discretion in deeming defendant's statement of uncontroverted material facts admitted where plaintiff responded with "denied.").

With respect to paragraphs 61, 78, 83, 94 and 95, Plaintiff denies these statements on the grounds that they are contrary to the statements and opinion of Dr. Nancy Little contained within Plaintiff's Exhibit 1 and attachments thereto. Again, Plaintiff's citations to the entire Exhibit 1 and attachments thereto do not meet the concision and specificity requirements of Local Rule 4.01(E) or Rule 56. See Ragas v. Tenn. Gas Pieplant Co., 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal citation omitted). The Court will, therefore, consider these facts undisputed for purposes of the District's Motion.

Finally, with respect to paragraph 100 of the District's statement of material facts, Plaintiff denies the statement for lack of foundation and speculation. A conclusory objection which fails to cite the record is inadequate. The Court will, therefore, consider this fact undisputed for purposes of the District's Motion.

---

[1] The purpose of this type of local rule is to "prevent a district court from engaging in the proverbial search for a needle in the haystack. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (cited case omitted).

It is undisputed Plaintiff enrolled in the District in August 2003. Prior to that time, Plaintiff attended the Union School District where he was identified as a student with a disability under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEA"). During the 1999-2000 school year, the Union School District prepared an individualized education plan (IEP) for Plaintiff. The following school year, 2000-2001, the Union School District discontinued Plaintiff's IEP when his mother, Lucinda Griffith, decided to home school him. While home schooled, Plaintiff was on medication for a medical diagnosis of ADHD but did not have an IEP or 504 Plan. During the 2002-2003 school year, Plaintiff attended the fifth grade in the Union School District and did not have an IEP. While attending the Union School District, Plaintiff's grades were "pretty good."

In August 2003, Plaintiff transferred to the District. From 2003 through the 2005-2006 school year, Plaintiff attended the District's junior high school. He describes his junior high years as "somewhat successful." Upon enrollment in the District, Plaintiff did not have an IEP or a 504 Plan and received extra 1:1 help from his sixth grade teachers without an IEP or 04 Plan.

On or about November 5, 2003, Plaintiff's mother requested the District evaluate him to see if he qualified as a student with a disability under the IDEA. The District refused Ms. Griffith's request for an IDEA special education evaluation since there was insufficient evidence to suspect Plaintiff had an IDEA disability and since he passed all areas of screening. At that time, and in response to Ms. Griffith's request, the District provided her with a required copy of the IDEA parent rights and procedural safeguards, which explained her right to pursue an IDEA administrative hearing (known as a "due process hearing") if she wished to legally challenge the District's refusal to evaluate. She did not pursue a hearing.

Although the District refused to evaluate Plaintiff for IDEA eligibility, the District agreed to have the teachers and parent initial Plaintiff's assignment notebook to assist him with homework completion. That practice was helpful to Plaintiff. During the 2003-2004 school year, Plaintiff's estimated instructional level was sixth grade, consistent with his same aged peers, and his grades ranged from A's to C's.

During the 2004-2005 school year, Plaintiff attended the District as a seventh grade student and did not have an IEP or 504 Plan. His grades ranged from A's to a D in science. As a seventh grader, Plaintiff participated in the state-wide MAP testing without accommodations in a classroom with fifteen to twenty other students and scored at "nearing proficiency" in Communication Arts and "proficient" in Math. During his sixth and seventh grade years, Plaintiff began experiencing issues at home.

During the 2005-2006 school year, Plaintiff attended the District as an eighth grade student and did not have an IEP or 504 Plan. Plaintiff continued to experience issues at home. He also had issues turning in assignments which brought his grades down "slightly." During this time, Plaintiff's grades ranged from 79 to 100 (on a 100 point scale). Plaintiff was on the "B" Honor Roll for achieving grades consisting of all As and Bs. He also scored at the "proficient" level on the Math portion of the state-wide MAP test.

During the 2006-2007 school year, Plaintiff attended the District's High School as a ninth grade student. In December 2006 or January 2007, his mother again requested the District evaluate Plaintiff under the IDEA based on a medical diagnosis of ADHD. On or about January 4, 2007 and in response to Ms. Griffith's request, the District again provided her with a copy of her IDEA procedural safeguards. The District convened a team of people, including Ms. Griffith, to consider

9

her request for an IDEA evaluation and, after reviewing existing data that demonstrated Plaintiff was performing at appropriate levels, again refused the request for an IDEA evaluation. Ms. Griffith did not legally challenge that refusal.

After concluding it did not need to evaluate Plaintiff under IDEA, the District offered and prepared a 504 Plan for him based on his medical diagnosis of ADHD. Both Plaintiff and his mother participated in the development of and agreed to the Plan, which included such accommodations as an extra set of text books, an assignment notebook to be initialed by teachers and parent, and the ability to receive extra assistance from teachers before and after school. The District provided Ms. Griffith with a Notice of Action proposing to implement a 504 Plan for Plaintiff which states "[Plaintiff] admitted he is not always putting in effort, but will start working harder." Although Plaintiff did not recall the discussion about his work effort, he agreed with the statement and testified on deposition that he was not putting forth effort because of issues at home and the fact that he was working late at night.

During the 2007-2008 school year, Plaintiff attended the District's High School as a tenth grade student. During this time, he was experiencing issues at home and his grades got worse. Plaintiff testified on deposition that one of the reasons for those worsened grades was his failure to turn in homework. He also testified his job at Walmart and his difficult home life were among the reasons he did not turn in homework. On or about September 21, 2007 and at the request of Plaintiff's mother, a team of people met to revise Plaintiff's 504 Plan. Ms. Griffith, Plaintiff and Ms. Griffith's attorney, John Althouser, were present at the meeting. At the meeting, Ms. Griffith and the rest of the team assured Plaintiff he was capable of doing the school work assigned. Ms. Griffith told Plaintiff he needed to do what the District was asking him to do. At this meeting, the 504 team

revised Plaintiff's 504 Plan. The following accommodations were among those included in his Plan: an extra set of text books, the opportunity to receive before and after school tutoring and assistance, and the relocation of his locker. Plaintiff only sometimes took advantage of the accommodations outlined in the 504 Plan and only sometimes accessed the tutoring and assistance that were available. As a tenth grader Plaintiff scored at the proficient level in Math on the MAP test which he took without accommodation. Also at this time Plaintiff's grandfather moved into the family home.

During the 2008-2009 school year, Plaintiff attended the District's High School as a junior. In August, High School Principal Enyart attended an informal meeting to discuss the fact that Plaintiff was not taking advantage of his 504 Plan. On or about November 6, 2008, the District held a Section 504 meeting scheduled to review and, if necessary, revise Plaintiff's 504 Plan. Plaintiff and his mother attended the meeting where Plaintiff's teachers discussed what they were doing for him. After that discussion, Ms. Griffith stated she realized everyone was trying to help Plaintiff, but that he was not helping himself. She then indicated that the teachers were wasting their time and if Plaintiff was not going to utilize the 504 Plan, there was no need to continue it. She then requested the District dismiss Plaintiff from the 504 Plan. In response to Ms. Griffith's request for dismissal of the 504 Plan, Principal Enyart asked Ms. Griffith to clarify that she was seeking dismissal and Ms. Griffith confirmed that was what she wanted. After the November meeting, the District sent Ms. Griffith written notice of the dismissal of the 504 Plan and a copy of the District's 504 procedural safeguards. At his deposition, Plaintiff could not recall if he requested that the 504 Plan be left in place or if he informed the team that he would start doing more. After November 6, 2008, neither Ms. Griffith nor Plaintiff requested reinstatement of the 504 Plan. At his deposition, Plaintiff

testified he believed the District would have placed him back on a 504 Plan had his mother not requested dismissal.

From December 2008 through March 2010, Plaintiff worked part-time at Walmart in the evenings. When he applied for the job, he informed the store he had a diagnosis of ADHD, but did not ask for accommodation. He was able to perform all the functions of the Walmart position without any accommodation. At his deposition, Plaintiff testified his Walmart job impacted him at school because he worked late and was tired at school. As a result, he did not "feel like doing homework most of the time."

During his high school years, Principal Enyart became aware that Plaintiff was working part-time at Walmart and discussed with Ms. Griffith the fact that Plaintiff was, at times, not in attendance at school but seen working at Walmart in the evening. She also discussed with Plaintiff the impact his part-time employment was having on his education and that his teachers reported he was sleeping at school.

In March 2009, Ms. Griffith requested the District test Plaintiff for special education. She did not make any requests in relation to Section 504. The District responded to Ms. Griffith's evaluation request and provided her a copy of the IDEA procedural safeguards. The District held a meeting on or about May 11, 2009 to review existing data in response to Ms. Griffith's IDEA evaluation request. Ms. Griffith, Plaintiff and Plaintiff's stepfather attended this meeting. After reviewing existing data, the District informed Ms. Griffith it had no reason to suspect an IDEA disability and that an evaluation was not warranted. The District offered to reinstate Plaintiff's prior 504 Plan but Ms. Griffith indicated the 504 Plan would not work and rejected that idea.

Also at the May 11, 2009 meeting, the District suggested Plaintiff participate in the

Missouri Options program, an alternative education program for students who need to recover graduation credits. The District has a policy that mandates loss of credit when a student is absent a specified number of times. The District policy allows for a challenge to the Board of Education when a student loses credits due to nonattendance; however, Plaintiff and his mother never challenged his loss of credits through this process. District staff informed Plaintiff and his family that he could receive some credit for his part-time work at Walmart. The District provided Plaintiff and his mother with a copy of the Application for the Options program on or about May 11, 2009, but Plaintiff did not want to participate in the program. In May 2009, Plaintiff was aware that he would not graduate with his class in May 2010.

During the 2009-2010 school year, Plaintiff attended the District as a senior. At his deposition, he testified he did not know if his mother requested he be evaluated for special education or placed back on a 504 Plan during his senior year. During the 2009-2010 school year, Plaintiff's teachers offered assistance to him. Plaintiff turned 18 in the fall of 2009 and became his own decision maker. After he turned 18, Plaintiff never requested to be placed back on a 504 Plan.

In 2010, Plaintiff's home life got "extremely worse." His biological father passed away on January 10, 2010 and he missed several days of school as a result. The death of his father had an "immense" impact on Plaintiff. His school attendance decreased and he put less effort into his schoolwork. The District gave Plaintiff the opportunity to make up any work missed during this time. Then in March 2010, Plaintiff quit his job at Walmart to care for his grandfather who had suffered a heart attack. The time spent caring for his grandfather reduced the time he was able to spend on homework, impacting his grades.

13

Because of difficulties with his stepfather, Plaintiff moved out of his mother's home in late June or early July 2010. On or about July 19, 2010, Plaintiff provided the District with a change of address.

In August 2010, Plaintiff registered for school for the 2010-2011 school year. On his registration form, he indicated he did not have an IEP or 504 Plan and did not request an evaluation for an IEP or 504 Plan. During the 2010-2011 school year, Plaintiff attended the District as a "super" senior because he lacked the credits to graduate with his class in May 2010. He ceased attending school in the District on or about September 9, because he was "having home issues and needed to find a new place to live." The District dropped Plaintiff from its roll ten days subsequent to that date for lack of attendance pursuant to its standard practice.

After September 2010, the District received a request from the Columbia, Missouri School District requesting Plaintiff's records due to his transfer to that District. Plaintiff was scheduled to begin attending Hickman High School in Columbia, Missouri in January 2011. At the time of his deposition in November 2010, Plaintiff was not being treated for ADHD and was not on any medication for that condition.

As stated previously, to establish a prima facie case of disability discrimination under both Section 504 and the ADA, Plaintiff must prove he is a qualified individual with a disability, was denied the benefits of a program or activity of a public entity, and was discriminated against based on his disability. See Timothy H., 178 F.3d at 971. These statutes do not create "general tort liability for educational malpractice." Monahan, 687 F.2d at 1170. Plaintiff must also show bad faith or gross misjudgment. Id. at 1171. "Great deference" is given to local school officials' educational judgments when evaluating whether there has been bad faith or gross misjudgment. Doe

14

v. Arlington County School Bd., 41 F.Supp.2d 599, 609 (E.D. Va. 1999). "Something more" than an incorrect evaluation, or a substantively faulty IEP is required for liability. Id. A school district does not violate the ADA or Section 504 where it has exercised "professional judgment in such a way as not to depart grossly from accepted standards among educational professionals...." Monahan, 687 F.2d at 1171.

The parties do not dispute Plaintiff has a medical diagnosis of ADHD; however, Plaintiff cannot merely rely on his diagnosis to prove a disability. He must show his ADHD substantially limits him in a major life activity, in this case, the major life activity of learning. See Nyrop, 616 F.3d at 734. The most favorable evidence in the record before the Court for Plaintiff's claim that his ability to learn has been substantially impaired is that his grades fell during high school. He has not, however, provided sufficient evidence that his ability to learn and academic success was affected in whole or in part by his medically diagnosed ADHD. Rather, the undisputed facts set out herein show Plaintiff was capable of achieving at an average and, in some cases, above average level without a 504 plan. Furthermore, Plaintiff admits, and the undisputed facts show, that his grades suffered as a result of his failure to make an effort and turn in his assignments, his part-time job, his spotty attendance record and his difficult home life.

For these reasons, even viewing the facts in the light most favorable to the Plaintiff, Plaintiff has failed to demonstrate he is "substantially limited' in the major life activity of learning. Therefore, Plaintiff cannot show as a matter of law that he is disabled within the meaning of Section 504 and the ADA. See Herzog v. Loyola College in Maryland, Inc., 2009 WL 3271246 (D. Md. Oct. 9, 2009) (granting summary judgment to defendant and holding that doctoral student's ADHD did not constitute a disability under the ADA where his ability to learn was not substantially limited

compared to the average person); D.P. v. Sch. Dist. Of Poynette, 2004 WL 602651 at *16 (W.D. Wis. March 16, 2004) (granting summary judgment on 504 discrimination claims and reasoning that "Plaintiffs have failed to put material facts into dispute that ...his attention deficit hyperactivity disorder qualified him as an individual with a disability."); Costello v. Mitchell Public School District 79, 266 F.3d 916, 923 (8th Cir. 2001) (affirming summary judgment for school district after determining that a student, previously under an IEP was not disabled, since her impairment had not prevented her from advancing to the next grade each year and only "moderately" limited her in learning); Bercovitch v. Baldwin Sch. Inc., 133 F.3d 141, 155, n.8 (1st Cir. 1998) (student with ADHD not disabled under ADA and 504).

However, even assuming that Plaintiff's ADHD qualifies him as an individual with a disability under Section 504 and the ADA, and even viewing the facts in the light most favorable to Plaintiff, the District is entitled to summary judgment since there is no evidence that the District discriminated against him by failing to continue his eligibility and accommodations under Section 504. While Plaintiff was enrolled in the District, the District did not ignore the requests of Plaintiff and his mother to evaluate him to see if he qualified as a student with a disability under the IDEA. After determining there was insufficient evidence that Plaintiff had an IDEA disability, since he passed all areas of screening and was performing at appropriate levels, the District offered and prepared a 504 Plan for Plaintiff. The record demonstrates that during the 2008-2009 school year, the District was in the process of reviewing Plaintiff's 504 Plan and revising the Plan if necessary. It was Plaintiff's mother who requested dismissal of his 504 Plan at that time, and neither she nor Plaintiff ever requested it be reinstated. In May 2009, the District offered to reinstate Plaintiff's prior 504 Plan, but again, Plaintiff's mother rejected that offer. The District also suggested Plaintiff

participate in the Missouri Options program, an alternative education program that would have permitted him to recover credits for graduation, but he did not want to participate.

In Brown v. District 299-Chicago Public Schools, 762 F.Supp.2d 1076, 1084 (N.D. Ill. 2010), cited by the District, a student alleging violations of § 1983 and the ADA claimed his lack of academic success during his freshman, sophomore and junior years of high school was attributable to the school's disregard of the accommodations required by his IEP. In granting summary judgment in favor of the school board, the district court observed the student had no evidence that any of the missing services contributed to his failed classes, and stated:

> It is necessary to consider carefully whether the services Brown was allegedly denied prevented his access to education. It is undisputed Brown was unsuccessful in high school, receiving mostly Ds and Fs, despite having the aptitude to succeed. *Assuming Brown's failing grades demonstrate that he was denied access to education, the central issue is whether he was unsuccessful because the school failed to provide him reasonable accommodations or whether he was unsuccessful because he did not avail himself of the opportunity given to him* by missing class, arriving late and unprepared, and not participating when he was in class. This inquiry is important because *the school board is liable only if Brown was denied access to education by reason of his disability and not because of his insufficiencies as a student*. (Emphasis added.)

Id. at 1084-1085. Plaintiff has not established that the lack of a 504 plan caused him to fail his classes. Rather, the record before the Court demonstrates he had the ability to succeed yet failed to take advantage of the accommodations provided him. In addition, Plaintiff has failed to demonstrate the District acted with bad faith or gross misjudgment. See Breen v. St. Charles R-IV School District, 2 F.Supp.2d 1214, 1221 (E.D. Mo. 1997) ("To show discrimination under [Section 504] plaintiffs must show more than the failure to provide a [free appropriate public education] FAPE, an incorrect evaluation, or a faulty IAP. Defendants are entitled to judgment as a matter of law."); Maus v. Wappingers Cent. School Dist., 688 F.Supp.2d 282, 302 (S.D.N.Y. 2010) ("[M]erely asserting that

17

the District failed to appropriately classify a child, without any evidence of bad faith or gross misjudgment, is not sufficient to defeat summary judgment.").

Finally, both parties acknowledge the 2009 amendments to the ADA [2], which broaden the definition of what constitutes a disability. Under the pre-amended law, the terms "major life activities" and "substantial limitation" were strictly interpreted "to create a demanding standard for qualifying as disabled...." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). The new law broadens the scope of protection available under the ADA and rejects the strict standards set forth in Toyota. See Nyrop, 616 F.3d at 734, n. 4 (and cases cited therein). Plaintiff contends that from the time the ADA was amended effective January 1, 2009, the District's obligations to him increased. The District argues there is no legal support for Plaintiff's contention.

Plaintiff's claim alleges conduct on the part of the District some of which occurred before the effective date of the amendments and some of which occurred after the effective date. The majority of courts addressing the issue have held the ADAAA "is not retroactive" and thus not applicable to claims of alleged disability discrimination before the effective date of the amendments. Id. With respect to conduct occurring after January 1, 2009, the new law does not support Plaintiff's position because even if Plaintiff is considered disabled under the new law's broadened definition of disability, the Court has found no evidence of discrimination based on disability or bad faith or gross misjudgment.

**IV. Conclusion**

---

[2] See, ADA Amendments Act (ADAAA) of 2008, Pub.L. No. 110–325, § 8, 122 Stat. 3553, 3559 (2008)

For the foregoing reasons, the Court will deny Defendant's Motion to Strike, deny Defendant's Motion for Judgment on the Pleadings, and grant Defendant's Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Clair R-XIII School District's Motion to Strike Affidavit of Dr. Nancy Little (ECF No. 26) is DENIED.

**IT IS FURTHER ORDERED** that Defendant St. Clair R-XIII School District's Motion for Judgment on the Pleadings or, in the Alternative, For Summary Judgment (ECF No. 19) is GRANTED in part and DENIED in part as follows:

Defendant's Motion for Judgment on the Pleadings is DENIED; and

Defendant's Motion for Summary Judgment is GRANTED.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 28th day of November, 2011.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE